CARIBE MOTORS CORPORATION, Plaintiff and Appellant, *v.* SECRETARY OF THE TREASURY, Defendant and Appellee.

No. R-70-117.     Decided May 5, 1971.

*Brown Newson & Córdova* for appellant. *Gilberto Gierbolini, Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for appellee.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

We must decide whether or not the motor vehicles utilized by appellant for its operations, others leased by the latter, and others utilized by it, are subject to property tax, notwithstanding they have license (plates) in conformity with the Vehicle and Traffic Law.

We conclude that the property tax in the case of said vehicles was paid because it was included in the license fee of each vehicle, and therefore, it was not proper to dismiss the complaint in this case requesting the refund of the said tax whose payment was required by the Department of the

Treasury. On the contrary, the judgment of the trial court dismissing said complaint must be reversed. We state the grounds for this decision below.

After the complaint and the answer were filed in this case, the parties agreed by stipulation that:

1.—The refund requested for the years 1958–1962 amounts to $104,085.50, which corresponds to the property tax imposed on the used motor vehicles acquired by appellant, vehicles devoted by appellant for renting purposes and vehicles utilized by appellant itself during 1958–1962.

2.—All said vehicles had license (plates) in conformity with the Vehicle and Traffic Law in force in all the years from 1958–1962.

3.—That the controversy is limited to the determination as to whether or not such vehicles were subject to the payment of property tax, despite the fact that the license (plates) fees for each one of them during the years in question had been paid.

The trial court concluded that:

". . . the Department of the Treasury never had in mind to exempt from the payment of property tax the motor vehicles which the dealers of such motor vehicles might have in stock at the time of the imposition of such tax.

".          .          .          .          .          .          .          .

"The text of the legal provision . . . [Sec. 291(n) of the Political Code—13 L.P.R.A. § 551(n)] is extremely precise, clear, and free from any ambiguity in excluding from its provisions the vehicles had in stock by natural or artificial persons who are dealers in motor vehicles, which includes, of course, plaintiff's vehicles object of the present taxation.

"The use given by plaintiff to its used vehicles is irrelevant to the purposes contemplated by the statute. The lawmaker must have been aware of the practice followed by the dealers in motor vehicles in Puerto Rico, in renting some of them, using others as 'company cars' and retaining others for sale."

Said court also concluded that:

"Plaintiff's contention to the effect that the taxation herein involved lacks equanimity, is untenable in the light of the established case law.

"The essential constitutional requirement is complied with if the same taxation is imposed on all the members of the affected class. And in the case under consideration the tax affects all the members of a class.

"Plaintiff also maintains that there is double taxation in this case. It is not right either. It is a well-established rule in relation to the taxation of motor vehicles, that the license fee does not constitute double taxation even if a property tax is also imposed on the vehicle. A fee by way of license for the use of a vehicle is not precluded because the same vehicle is subject to a tax ad valorem."

Appellant assigns that the trial court erred in concluding that the tax exemption provided by said § 291(n) is not beneficial to appellant; that the taxation in this case is unfair, arbitrary, and discriminatory, and constitutes a case of double taxation.

First, let us see the legislative history of the tax exemption on personal property provided by said § 291(n).

On April 26, 1949, Acts Nos. 109 and 116 were approved. The former (§ 291(n)) exempted motor vehicles from the payment of property tax. The second (9 L.P.R.A. § 179) increased the license (plate) fees to be paid in 20% in the case of the private-service motor vehicles, and in 10% in the case of public-service motor vehicles. On April 30, 1952, Act No. 151, amending said § 291(n) of the Political Code, was approved.

In his explanatory memorandum of the proposed bill which became Act No. 151, the Secretary of the Treasury informed the Legislative Assembly that the purpose of the amendment was that the dealers in motor vehicles shall pay property tax

on the vehicles had in stock on January 1 of each year, *since they never pay any license fee on such vehicles.*[1]

It is evident that the purpose the Secretary of the Treasury had in mind in propounding the bill which became Act No. 151, was that the dealers in motor vehicles should

---

[1] The text of the Secretary of the Treasury's report with respect to the amendment to § 291(n) of the Political Code reads as follows:

"The purpose sought by the approval of said two Acts [Nos. 109 and 116] was to simplify the collection of taxes, preventing the loss of time which for many years had been experienced by the government under the system of taxation of motor vehicles in the same manner as other taxpayers' property. The greatest difficulties for collection arose from the fact that a great number of receipts issued annually were uncollectible because of the frequency with which the motor vehicles were transferred and the insolvency of the persons liable for the payment of the tax.

"The Department of the Treasury considered that the most effective and less expensive manner for the collection of the property tax on motor vehicles was by collecting the same as part of the license fees imposed by § 9 of the Automobile and Traffic Act. In order to attain this objective, the Department computed the percent that should be increased on the aforementioned license fees, to compensate for the amount which would not be collected for property tax. Hence, two Acts were approved, one amending § 9 of the Automobile and Traffic Act, and another adding Subd. (n) to § 291 of the Political Code, to declare exempt from taxation the motor vehicles subject to the payment of license fees provided by § 9 of the Automobile and Traffic Act.

"In promoting the approval of the two aforementioned Acts, the Department of the Treasury never had in mind to exempt from the payment of property tax the motor vehicles had in stock on January 1 by the dealers in said vehicles. The Department did not consider these vehicles for two reasons: (1) because it never had difficulty in the collection of property taxes on motor vehicles had in stock on January 1 of each year by said dealers, inasmuch as the latter had to declare them as a part of their stock and it was easy for the Department to corroborate the veracity of their declarations and collect the taxes on said automobiles, (2) because it was not fair to exempt from the payment of property tax on said vehicles the persons who would never have to pay in exchange, *since the dealers in motor vehicles never pay license fees on the motor vehicles they have in stock for sale.* Said dealers only pay a license fee for engaging in the business of dealers of motor vehicles. (Italics ours.)

"However, the Department of Justice is of the opinion that by virtue of the provisions of Act No. 109 of April 26, 1949, all motor vehicles subject to payment of license fees provided by § 9 of the Automobile and Traffic Act, are exempt from the payment of property tax and that, consequently, the motor vehicles had in stock on January 1 of each year by the dealers in

pay property tax for those vehicles had in stock on January 1 of every year, vehicles which did not pay any tax whatsoever for license (plates) or for inventory up to that date. It is necessary to examine first the opinion of the then Attorney General (now Secretary of Justice) of July 5, 1951, with respect to the scope of subd. (n) of § 291 which, as amended by the aforesaid Act No. 109, provided that *"Motor vehicles subject to payment of license [plates] fees"* would be exempt from property tax. (Italics ours.) The Department of the Treasury maintained then that this provision should be interpreted in the sense that the exemption was limited to those vehicles which on January 15 of each year[2] *have effectively paid the license (plate) fees.*

Said opinion held that said phrase "subject to payment of license fees" means vehicles which because of their nature are subject to payment of a license fee; that said phrase does not mean fees actually paid. By virtue thereof, the Solicitor General concluded, in effect, that the motor vehicles in the dealer's possession on January 1 were exempt from the payment of said tax, even though the license (plate) fee had not been paid on each one of them, provided they "were subject to the payment of said fee."

In view of said opinion, the Secretary of the Treasury was bound to make effective his former interpretation of § 291 (n) in question (§ 291 exempts from the payment of property tax a long series of properties, among which the motor vehicles are mentioned, in subd. (n)) by the amend-

---

motor vehicles are not subject to the payment of property tax.

"The Department of the Treasury considers that there is no reason whatsoever to justify that the dealers in motor vehicles do not pay property tax on the motor vehicles had in stock on January 1 of each year. It is evidently unfair that the rest of the merchants have to pay taxes on all their stock in addition to the license fees and patents which they also have to pay, and that the dealers in motor vehicles only pay for a part of their stock."

[2] The date when the taxable condition arises in Puerto Rico is, at the present time, January 1 of each year (13 L.P.R.A. § 450).

ment proposed and which became Act No. 151, which amended subd. (n) of § 291 of the Political Code, to read as it reads now:

"(n) Motor vehicles subject to payment of license fees (number plates) provided by the Automobile and Traffic Act, sections 171–196 of Title 9, except those had in stock by natural or artificial persons who are dealers in motor vehicles."

From the foregoing it is evident that the purpose of the last amendment of said subd. (n) was to impose a tax on the motor vehicles which the dealers have in stock for sale and on which no tax whatsoever has been paid, and not that of imposing again the property tax on the vehicles for which tax has already been paid by the payment of license (plate) fees. The fact that these latter vehicles are in possession of the dealers on January 1 of each year by itself does not subject them to the payment of the property tax, when the same was already paid in the case of such vehicles within the license (plate) fees.

The term "except those had in stock by . . . dealers" should not be interpreted literally and separately, but rather in consonance with the tax scheme established by the afore-cited Acts Nos. 109, 116, and 151, and the purposes thereof clearly set forth by the Secretary of the Treasury. The legislative intent with respect to the scope of Act No. 151, amending subd. (n), necessarily was the one set forth by the Secretary of the Treasury. So that *the fair and correct interpretation of said phrase is that the motor vehicles had in stock by the dealers with respect to which the license (plate) fees have not been paid are not subject to the tax exemption provided by § 291 (n).*

As in the case at bar, there appears from the stipulation signed by the parties that the license (plate) fees had been paid with respect to the used motor vehicles acquired by appellant, others dedicated to his rental car business, and

others utilized for his own use, it was not proper to collect the property tax with respect to such vehicles. Therefore, the tax thus unduly collected by and paid to the Secretary of the Treasury must be reimbursed by the latter to appellant.

In view of the foregoing, the judgment rendered by the trial court in this case should be reversed and another rendered sustaining the complaint and by virtue thereof the Secretary of the Treasury should be ordered to reimburse to appellant the amounts indicated in paragraph 3 of the aforesaid stipulation, the total amount of which is $104,085.50, plus interest, as provided by Act No. 232 of May 10, 1949 (13 L.P.R.A. § 262).